Lozaro **MORALES**, Petitioner,

v.

**Joyce K. CONLEY, Warden, Federal Correctional Institution, Beckley, West Virginia, Respondent.**

No. Civ.A. 5:02–0497.

United States District Court, S.D. West Virginia, Beckley Division.

Sept. 26, 2002.

Lazaro Morales, Beaver, WV, pro se.

Michael L. Keller, U.S. Attorney's Office, Charleston, WV, Debbie Stevens, Beaver, WV, for defendant.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Petitioner Morales brought this action pursuant to 28 U.S.C. § 2241 seeking a writ of habeas corpus. By standing order, it was referred to Magistrate Judge R. Clarke Vandervort, who has submitted his Proposed Findings and Recommendation (PF & R). Petitioner requested an extension of time to respond to the PF & R, which was granted, and then filed timely objections. The Court reviews *de novo* those portions of the Magistrate Judge's report to which Petitioner objects.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner arrived in this country as part of the Mariel boatlift. As our Court of Appeals explained:

In 1980, some 125,000 Cuban aliens arrived without visas in Florida aboard a flotilla of small boats. Cuban authorities had taken advantage of this exodus to give criminals the option to remain in prison or to leave for the United States. Immigration officers found that about 25,000 of the arriving aliens admitted some criminal history, but only about 2,000 were deemed to have backgrounds serious enough to warrant continued detention. Most of the other aliens were promptly paroled under provisions of the Immigration and Nationality Act, 8 U.S.C. § 1182(d)(5), after sponsors were found.

*Palma v. Verdeyen,* 676 F.2d 100 (4th Cir. 1982). In December 1984, Cuba and the United States reached an agreement under which Cuba was to take back 2,746 Mariel Cubans. Cuba suspended the agreement in May 1985 after only 201 excludable Cubans had been returned. In November 1987 Cuba agreed to resume implementation of the 1984 agreement, but only 450 Mariel excludables have returned to Cuba since 1987. (*See Gisbert v. Attorney General,* 988 F.2d 1437, 1439, n. 4 (5th Cir.1993))

Morales arrived in the United States at Key West, Florida in May 1980. The only criminal history shown from Cuba is that he was AWOL from the Cuban army for three months. (Respondent's Resp. to Order to Show Cause, Ex. A.) An unverified list of criminal history following immigration parole in this country reports Morales has been arrested thirty-two times, including charges of second-degree homicide, possession and sale of cocaine and marijuana, vehicle theft, and aggravated battery.[1] (*Id.*) A final exclusion order was entered in

---

1. Morales notes his reported criminal history includes 1998 charges of "possession of cocaine, possession of a firearm by a convicted felon, carrying a concealed weapon and sale or purchase of cocaine." Because he has been in the custody of INS since 1993, Morales questions the basis for this report. (*See* Objs. to Mag.'s [PF & R] (hereafter "Objections") at 25.)

He also denies any knowledge of the 1982 homicide, which he says is the reason he denies any knowledge when questioned by the parole panel. (*Id.*) The report of Morales' criminal history for 1982 says, "1982 Willful Kill (Homicide) 2nd degree, Agg. Assault (*Need Evidence* )". (Respondent's Resp. to Order to Show Cause, Ex. A (emphasis added).)

September 1992. After he was released from CRC Correctional Institution, Cross County, Florida on March 23, 1993 after serving a ten (10) month sentence, Morales was taken immediately into custody by the Immigration and Naturalization Service ("INS") and placed in a federal prison. He has been detained by the INS continuously in federal prison since 1993. Morales was last interviewed and his case reviewed by INS examiners on August 1, 2001.

Morales filed this petition for habeas corpus alleging he has been incarcerated for nine years without trial or conviction in violation of the Fifth and Thirteenth Amendments. Petitioner claims that because his detention is indefinite and without precedent conviction, he is being deprived of liberty without due process of law, punished although he committed no crime, and is entitled to immediate release pursuant to the Supreme Court's recent decision in *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001).

Relying on *Zadvydas* and *Palma, supra,* the Magistrate Judge concluded that, as an inadmissible alien, Morales may be detained indefinitely. Neither statute 'nor the Constitution limits detention of aliens such as Morales who are subject to what is known as the "entry fiction." That is, their legal status is as if they have never been admitted to the United States. So long as the process specified in the Cuban Review Plan, 8 C.F.R. § 212.12, is being followed, Petitioner is receiving all of the process he is due as an inadmissible alien subject to deportation. (*See* PF & R at 8.)

For these reasons, denial of the petition for habeas relief was recommended.

Morales objects the Magistrate Judge misinterpreted *Zadvydas*. According to Petitioner, if correctly interpreted, *Zadvydas'* holding includes inadmissible aliens among those who cannot be indefinitely detained under 8 U.S.C. § 1231(a)(6). Morales also objects to the conclusion that "the continued INS detention of [excludable Mariel Cubans] is not punishment and does not constitute a violation of the aliens' rights to substantive due process." (PF & R at 6 (quoting *Gisbert,* 988 F.2d at 1442).) Finally, Morales objects international law forbids arbitrary detention. The Court considers each of these objections.

## II. DISCUSSION

### A. Indefinite Detention of Inadmissible Mariel Cubans

Under Art. I, § 8, cl. 4 of the Constitution [2] and the plenary power doctrine,[3] the executive and legislative branches of our government have coordinate authority to establish and enforce policies for admission to and exclusion from this country. The Supreme Court has "long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." *Shaughnessy v. United States ex rel. Mezei,* 345 U.S. 206, 210, 73 S.Ct. 625, 97 L.Ed. 956 (1953).

■ Generally, the rights and privileges of aliens are determined by their alien status. An alien seeking initial admission

---

**2.** The legislature has the power to "establish an uniform Rule of Naturalization." U.S. Constit. Art. I, § 8, cl. 4.

**3.** The plenary power doctrine states that "any policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the

war power, and the maintenance of a republican form of government. Such matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference." *Harisiades v. Shaughnessy,* 342 U.S. 580, 588–89, 72 S.Ct. 512, 96 L.Ed. 586 (1952).

to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude is a sovereign prerogative. *Landon v. Plasencia,* 459 U.S. 21, 32, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982). When an alien "gains admission to our country and begins to develop the ties that go with permanent residence his constitutional status changes accordingly." *Id.*

■ Most of the Mariel boat people, including Morales, were paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A), which provides:

> The Attorney General may ... in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant benefit any alien applying for admission to the United States, *but such parole of such alien shall not be regarded as an admission of the alien* and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

*Id.* (emphasis added).

■ The legal rights of aliens in this country are framed, to a large extent, by the doctrine called the "entry fiction." "Although aliens seeking admission into the United States may physically be allowed within its borders pending a determination of admissibility, such aliens are legally considered to be detained at the border and hence as never having effected entry into this country". *Gisbert,* 988 F.2d

at 1440 (citing *Garcia–Mir v. Smith,* 766 F.2d 1478, 1484 (11th Cir.1985), *cert. denied,* 475 U.S. 1022, 106 S.Ct. 1213, 89 L.Ed.2d 325 (1986)); *see Zadvydas,* 533 U.S. at 692–93, 121 S.Ct. 2491; *Mezei,* 345 U.S. at 213, 215, 73 S.Ct. 625 (excluded alien held at Ellis Island was treated "as if stopped at the border"); *Kaplan v. Tod,* 267 U.S. 228, 230, 45 S.Ct. 257, 69 L.Ed. 585 (1925) (Excluded alien present in the United States for nine years "was still in theory of law at the boundary line and had gained no foothold in the United States[.]"). In this case, Morales who was never admitted to the United States, although paroled into the country, and who has been ordered excluded is an excludable alien.[4]

Before 1996, the INA explicitly required the Attorney General to take into custody any excludable alien convicted of an aggravated felony, pending a determination of excludability. 8 U.S.C. § 1226(e)(1) (1994). An aggravated felony includes "illicit trafficking in a controlled substance ... including a drug trafficking crime (as defined in section 924(c) of Title 18)." 8 U.S.C. § 1101(a)(43)(B). A "drug trafficking crime" is any felony punishable under the Controlled Substances Act. 18 U.S.C. § 924(c). Morales' criminal record includes possession of cocaine, selling cocaine, and possession with intent to sell cocaine, all of which qualify as drug trafficking crimes and thus aggravated felonies.

While Section 1226 did not expressly grant authority to detain excluded aliens indefinitely, most courts, including the Fourth Circuit, addressing the issue of indefinite detention of Mariel Cubans have concluded that Congress implicitly authorized the Attorney General to order such

---

4. As amended by the Antiterrorism and Effective Death Penalty Act and the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") in 1996, the INA now refers to "inadmissible" aliens in place of "excludable" aliens.

detention. *Palma v. Verdeyen,* 676 F.2d 100, 104 (4th Cir.1982) ("[W]e conclude that Congress implicitly authorized the Attorney General to order such [indefinite] detention [of an excludable alien after an unsuccessful attempt to return him.]"); *Gisbert,* 988 F.2d at 1447 (INA authorizes Attorney General to detain Mariel Cubans whether or not convicted of aggravated felonies until United States is able to deport them); *Garcia–Mir v. Meese,* 788 F.2d 1446 (11th Cir.1986); *Barrera–Echavarria v. Rison,* 44 F.3d 1441 (9th Cir. 1995); *Guzman v. Tippy,* 130 F.3d 64 (2nd Cir.1997); *Carrera–Valdez v. Perryman,* 211 F.3d 1046 (7th Cir.2000). *But see Rosales–Garcia v. Holland,* 238 F.3d 704 (6th Cir.2001) (holding, over strong dissent, that the indefinite nature of detention violates the Fifth Amendment); *Rodriguez–Fernandez v. Wilkinson,* 654 F.2d 1382 (10th Cir.1981) (holding that indefinite detention is not a permissible alternative to exclusion).

In 1996 in the IIRIRA, Congress amended the INA to introduce a uniform detention, release and removal proceeding applicable to all aliens deemed deportable or inadmissible. 8 U.S.C. § 1231(a). Pursuant to Section 309(c)(1) of the IIRIRA, new Section 1231 applies only to aliens whose exclusion proceedings began after April 1, 1997. Morales' exclusion proceedings were completed in 1992 so § 1231 does not apply to him. Rather § 1226, discussed above, is the law under which Morales is detained.

Without acknowledging the inapplicability of Section 1231 to his situation, Morales argues that the Supreme Court's recent analysis of § 1231 in *Zadvydas v. Davis,* 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) should apply and require the

Court to grant his petition for habeas corpus. In *Zadvydas,* the Supreme Court considered the cases of two resident aliens who had been ordered removed, but were being detained indefinitely due to the government's inability to repatriate them. To avoid constitutional problems, the Court held § 1231 implicitly "limits an alien's post-removal-period detention [5] to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." *Id.* at 689, 121 S.Ct. 2491. The Court explained, "We deal here with aliens who were admitted to the United States but subsequently ordered removed. Aliens who have not yet gained initial admission to this country would present a very different question." *Id.* at 682, 121 S.Ct. 2491. The Court also distinguished the *Zadvydas* cases from *Mezei,* which involved the entry fiction, that is, an alien who "was 'treated,' for constitutional purposes, 'as if stopped at the border.'" *Id.* at 693, 121 S.Ct. 2491 (quoting *Mezei,* 345 U.S. at 213, 215, 73 S.Ct. 625). *Mezei* differed from the *Zadvydas* cases in that "critical respect" and "that made all the difference." *Id.*

In both of these crucial respects, Morales' situation is distinguishable from the resident aliens in *Zadvydas* to whom the Supreme Court applied § 1231. Morales was never "admitted" to the United States, but was always subject to the entry fiction, and, since 1992 has been deemed excludable for criminal activity. The Magistrate Judge correctly concluded that *Zadvydas* does not apply to an inadmissible alien, particularly one excluded before April 1997.

Most courts considering the situation of Mariel Cubans post-*Zadvydas* have

---

**5.** When an alien is found to be unlawfully present in the United States, the government ordinarily secures the alien's removal within a subsequent ninety day statutory "removal period," during which time the alien is normally held in custody. *Zadvydas,* 533 U.S. at 682, 121 S.Ct. 2491.

reached the same conclusion. *Fernando–Fajardo v. INS*, 193 F.Supp.2d 877 (M.D.La.2001) (indefinite detention of excludable alien does not violate substantive due process and *Zadvydas* not applicable); *Hernandez Nodarse v. United States*, 166 F.Supp.2d 538 (S.D.Tex.2001) (*Zadvydas* not applicable to excludable aliens); *Guerra v. Olson*, 24 Fed.Appx. 617, 2001 WL 1646779 (7th Cir.2001) (same); *Perez–Leal v. INS*, 2002 WL 1347750 (D.Minn.2002) (same); *Hoyte–Mesa v. Ashcroft*, 272 F.3d 989 (7th Cir.2001) (same); *but see Borrero v. Aljets*, 178 F.Supp.2d 1034 (D.Minn. 2001) (holding *Zadvydas* applies to excludable as well as resident aliens and granting writ of habeas corpus to Mariel Cuban). The Ninth Circuit applied *Zadvydas*, however, and held it applied to all aliens, including those deemed inadmissible. *See Xi v. United States Immigration and Naturalization Service*, 298 F.3d 832 (9th Cir. 2002) (strong dissent argued inadmissible aliens could be indefinitely detained under *Zadvydas* ).

In 1987 the Justice Department enacted the Cuban Review Plan, 8 C.F.R. § 212.12, which expands consideration of immigration parole with respect to Mariel Cubans. Detained Mariel Cubans are granted an annual hearing by INS. *Id.* at § 212.12(g)(2). To be released from custody, detainees must be found likely to remain nonviolent, no longer to pose a public threat, and not likely to violate the conditions of parole. *Id.* at (d)(2). As noted above, Morales has received this annual review. He was last interviewed, according to records provided to the Court, on August 1, 2001. The resulting parole denial notice states:

> You have demonstrated a propensity to engage in recidivist criminal behavior as reflected by your criminal records.... Further, you were recently cited on 02/13/2001 for use of narcotics as well as on 02/09/2000 for being in an unauthorized area. In addition, the interviewing officers deemed your responses to questions presented for discussion non-credible. As such, in light of your propensity to engage in recidivist criminal conduct as reflected by your criminal record, your institutional misconduct, AND your inability to accept responsibility for same, it is NOT clearly evident that you are unlikely to remain non-violent were a more favorable decision to have been rendered on your behalf.

(Resp. to Order to Show Cause, Ex. B.)

Considering the statutory history, the applicable caselaw and Morales' situation as a never-admitted, inadmissible alien adjudged excludable in 1992, the Court **FINDS** and **CONCLUDES** the Magistrate Judge correctly recommended denial of Morales' petition for habeas corpus on the basis that *Zadvydas* required his immediate release.

### *B. Detention as Punishment*

■ Morales objects to the Magistrate Judge's ostensible finding that continued detention is not punishment. The Magistrate Judge was quoting *Gisbert, supra,* 988 F.2d at 1442, for the proposition that the continued detention of excludable Mariel Cubans does not violate aliens' rights to substantive due process. (PF & R at 6.) In that context, however, *Gisbert* also holds such detention is not punishment. *Gisbert* says, "We hold that the continued INS detention of the [detained Mariel Cubans] is not punishment and does not constitute a violation of the aliens' rights to substantive due process." *Id.* at 1442.

Morales claims that, by being detained in a federal correctional institution with convicted criminals and subjected to institutional requirements such as double- or triple-bunking, strip searches and searches of his personal belongings, his detention is equivalent to the punishment inflicted on his fellow inmates. Morales complains the

prison is a violent atmosphere with fighting, assaults with dangerous weapons and rapes. He does not complain that he is subject to corporal mistreatment, but rather that detention in a federal prison under these institutional conditions is "psychological torture."

Morales does not contend his detention is intended as punishment and he acknowledges the government's purpose is detention. (Objections at 16.) There is no evidence the government does intend to punish inadmissible aliens.[6] In the absence of express intent to punish, the most significant factors in identifying punishment are "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." *United States v. Salerno*, 481 U.S. 739, 747, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) (quotations omitted). Court applying this test have generally found that detention of an illegal alien to protect society from potential danger is a rational, non-punitive purpose for detention. *See Alvarez–Mendez v. Stock*, 941 F.2d 956, 962 (9th Cir. 1991); *Gisbert v. Attorney General*, 988 F.2d at 1442; *In re Cuban*, 822 F.Supp. 192, 196 (M.D.Pa.1993); *Villalon–Galloso v. INS*, 1997 WL 117005 at *1 (E.D.Pa. 1997).

In denying Morales' reparole, the review board found, based on his prior criminal record, his institutional misconduct, and his lack of credibility at his annual review hearing, it was not able to conclude Mor-

ales was likely to remain non-violent upon release. To protect society and because his repatriation to Cuba is not possible, Morales' detention is necessary and is not an excessive means of accomplishing that protection.

For these reasons, Morales' objection to the Magistrate Judge's recommendations on this ground is **OVERRULED.**

### C. International Law

■ Finally, Morales objects that his indefinite arbitrary detention violates international law. The Fourth Circuit briefly examined this claim in *Palma, supra*, 676 F.2d at 106, n. 5. There the court acknowledged that "A state violates (customary) international law if, as a matter of state policy, it practices, encourages or condones ... prolonged arbitrary detention." *Id.* As the court had demonstrated, however, Palma's detention was not arbitrary because it was based on the Attorney General's procedures for review of each detainee's case, now formalized at 8 C.F.R. § 212.12. *See Palma* at 102. Similarly, Morales undergoes an annual review based on the procedures and standards of the Cuban Review Plan and the results of his annual review, not an arbitrary decision, require his continued detention.

For these reasons, the Court **OVERRULES** Petitioner's objections to the Magistrate Judge's PF & R. The Court adopts and incorporates the PF & R. Petitioner's application for a writ of habeas corpus is **DENIED** and his application is

---

**6.** In the context of deportation of resident aliens, the Supreme Court found deportation proceedings are not intended as punishment. *INS v. Lopez–Mendoza*, 468 U.S. 1032, 1038–39, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984) ("A deportation proceeding is a purely civil action to determine eligibility to remain in the country, not to punish an unlawful entry.... The purpose of deportation is not to punish past transgressions but rather to put an end to a

continuing violation of the immigration laws."). Because aliens subject to exclusion are not entitled to the same constitutional protection as resident aliens, the *Gisbert* court concluded detention pending removal and stemming from exclusion proceedings is not intended as punishment. *Gisbert*, 988 F.2d at 1442, n. 8 (citing *Jean v. Nelson*, 727 F.2d 957, 968 (11th Cir.1984) (en banc)).

**DISMISSED** with prejudice and stricken from the Court's docket.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to the named parties and counsel of record and post it on the Court's website at http://www.wvsd.uscourts.gov.