**Julio SOTO–RAMIREZ, Petitioner,**

v.

**John D. ASHCROFT, Christine G. Davis, and Michael A. Zenk, Warden, Respondents.**

**Civil No. 1:CV–01–1555.**

United States District Court, M.D. Pennsylvania.

Oct. 29, 2002.

14. The exception is whether the hypertension is covered. *See* note 3 supra.

Julio Soto–Ramirez, White Deer, PA, pro se, for Petitioner.

Bruce Brandler, U.S. Attorney's Office, Harrisburg, PA, for Respondents.

Marty Carlson, U.S. Attorney's Office, Harrisburg, PA, pro se.

### MEMORANDUM

CONNER, District Judge.

Before the court is petitioner Julio Soto–Ramirez's petition for writ of habeas corpus under 28 U.S.C. § 2241. Petitioner has been detained by the Immigration and Naturalization Service ("INS") and is currently being held in custody at Federal Correctional Institution Allenwood, in White Deer, Pennsylvania. (Doc. 1).

In the instant petition, Soto–Ramirez claims that his continued detention while awaiting removal is beyond the Attorney General's statutory authority, violates his Fifth Amendment right to due process of law and constitutes cruel and unusual punishment in violation of the Eighth Amendment.[1]

### I. Background

Petitioner is a Cuban national who came to the United States in the Mariel Boatlift

---

1. Inexplicably, petitioner also claims that his detention is in violation of his rights under the Tenth Amendment. Noting that the Tenth Amendment reserves certain rights to the States and that petitioner is detained in federal custody under federal law, we will deny the petition to the extent it relies on a violation of the Tenth Amendment without further analysis or comment.

of 1980.[2] Petitioner was paroled into the United States upon his arrival. But his parole was revoked in 1988 when he was convicted of assault. (Doc. 6, Exhibit 4, pg. 3). Upon his release, petitioner "demonstrated a propensity to engage in assaultive criminal behavior." (Doc. 6, Exhibit 7). He has been arrested on 12 separate occasions for assault, disorderly conduct and criminal damage to property. *Id.* In 1991 and 1992 respectively, petitioner received two separate felony convictions: indecent assault and battery on a child under the age of 14 (1991), and assault and battery by means of a dangerous weapon (1992). (Doc. 6).

On March 7, 1996, while serving his sentence on the above mentioned felony convictions, petitioner's parole was revoked for a second time when the Immigration and Naturalization Service ("INS") deemed him excludable, under 8 U.S.C. §§ 1182(a)(2)(A)(i)(I); 1182(a)(7)(A)(i)(I),[3] and took him into custody pending a removal hearing before an Immigration Judge ("IJ"). On May 3, 1996, the IJ denied petitioner's request for asylum and ordered petitioner removed. (Doc. 6, Exhibit 2). Petitioner appealed the IJ's denial of asylum to the Board of Immigration Appeals ("BIA"). On January 17, 1997, petitioner's order of removal became administratively final when the BIA dismissed his appeal, stating that "applicant's felony convictions of indecent assault and battery on a child, and assault and battery by means of dangerous weapon, are on their face 'particularly serious crimes,' barring him from asylum . . . ." (Doc. 6, Exhibit 3) (citations omitted).

Since his removal order became final, petitioner has remained in INS custody at FCI–Allenwood awaiting removal. Petitioner has had annual custody reviews in accordance with the requirements of 8 C.F.R. § 212.12. (*See* Doc. 6, Exhibits 4–7). To be granted parole, the review panel must find that

(i) The detainee is presently a nonviolent person;

(ii) The detainee is likely to remain nonviolent;

(iii) The detainee is not likely to pose a threat to the community following his release; and

(iv) The detainee is not likely to violate the conditions of his parole.

8 C.F.R. § 212.12(d)(2). Petitioner has been denied parole after each review. He has been denied parole for a variety of reasons, including his criminal record, history of violence while incarcerated,[4] and mental instability.[5] (Doc. 6, Exhibits 4–7).

2. For background information about the Mariel Cuban Boatlift of 1980, *see Damas–Garcia v. United States*, 2001 WL 1231480, *1 (D.N.J. 2001); *Moret v. Karn*, 746 F.2d 989, 990 (3d Cir.1984).

3. In 1996, the INA was overhauled by passage of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, *et seq.*, and the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), Pub.L. No. 104–208, 110 Stat. 3009–546 *et seq.* As noted by the Third Circuit, "Immigration law is sufficiently labyrinthian without jumbled cross-references to the sections of the Immigration Act, IIRIRA, AEDPA, and the United States Code. When

referring to statutory provisions, we therefore cite only to the United States Code whenever possible." *Ngo v. I.N.S.*, 192 F.3d 390, 395 n. 3 (3d Cir.1999). The court will follow the Third Circuit's recommendation for statutory citations.

4. For example, petitioner's 1999 (Doc. 6, Exhibit 6) and 2000 (Doc. 6, Exhibit 7) annual reviews refer to citations for inmate fighting and assault of a prison guard as factors which led to the denial of parole.

5. Petitioner received a comprehensive mental health evaluation in July 2000. (Doc. 6, Exhibit 8). In this evaluation, the mental health professional diagnosed petitioner with "possi-

Petitioner now argues that his continued detention is unconstitutional.

## II. *Discussion*

### A. **Petitioner's Status as a Mariel Cuban.**

 As a threshold matter, the court must address petitioner's misapprehension of his legal status as an "inadmissible" [6] alien. In his petition, Mr. Soto–Ramirez contends:

> The cases involving indefinite detention of excludable aliens symply [sic] do not support the constitutionality of indefinite detention of aliens *who have entered the United States.* To the contrary, our case law makes clear that, as a general matter, aliens *who have entered the United States,* legally or illegally, are entitled to the protection of the Fifth Amendment.

(Doc. 1) (citations omitted) (emphasis added).

Although it is an understandable mistake considering he has lived within our borders for approximately twenty-two years, petitioner incorrectly states that he has "entered" the United States. As a paroled Cuban, petitioner was never admitted to the United States. *See Ngo v. I.N.S.,* 192 F.3d 390, 392 (3d Cir.1999) ("[Parole] amounts to permission by the Attorney General for ingress into the country but is not a formal 'admission.' ") (citations omitted); *Damas–Garcia v. U.S.,* 2001 WL 1231480, *1 (D.N.J.2001) ("Individuals who are granted entry into the United States on immigration parole, such as the Mariel Cubans, are not considered legal aliens, but rather are considered the same as individuals who have only just arrived at the U.S. border.") (citing 8 U.S.C. § 1182(d)(5)(A)); *Chavez–Rivas v. Olsen,* 207 F.Supp.2d 326, 328 (D.N.J.2002) ("We tempered our welcome, however, by treating these Cuban immigrants as though they were still in the perpetual legal limbo of an immigrant just outside our territorial borders, with all the limitations on personal rights and liberties that derive from that status.").

Section 1182(d)(5)(A) provides:

> The Attorney General may, except as provided in subparagraph (B) or in section 1184(f) of this title, in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

As noted above, Soto–Ramirez entered United States territory on immigration parole in 1980. In 1996, his parole was revoked as a result of two felony convictions, which followed a history of aberrant, criminal behavior. Accordingly, he now stands, although physically well within the United States border, on the same legal footing as an immigrant at the door, seek-

---

ble bipolar disorder" and "antisocial personality disorder." *Id.*

6. Prior to 1996, the INA referred to aliens who never officially entered our country and whose parole status was revoked as "excluda-
ble" aliens. *Ngo,* 192 F.3d at 390, 395 n. 4. (3d Cir.1999). Under the INA as amended, the terminology used for these aliens has been changed from "excludable" to "inadmissible." *Id.*

ing admission to the United States. 8 U.S.C. § 1182(d)(5)(A); *Chavez–Rivas v. Olsen*, 207 F.Supp.2d at 328. With this misunderstanding out of the way, the court turns to petitioner's statutory challenge.

## B. Application of *Zadvydas v. Davis* to the Detention of Inadmissible Aliens Subject to a Final Removal Order.

The first question raised by the instant petition is whether the Supreme Court's interpretation of 8 U.S.C. § 1231(a)(6), in *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), controls the detention of inadmissible aliens who are now subject to a final removal order. Petitioner contends that *Zadvydas'* holding applies equally to all aliens and, hence, mandates the issuance of a writ of habeas corpus.

When an alien is ordered removed, the Immigration and Nationality Act ("INA") provides that "the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A).[7]

The removal period begins on the latest of the following:

(i) The date the order of removal becomes administratively final.

(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

(iii) If the alien is detained or confined (except under an immigration pro-

cess), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

During the removal period, the Attorney General must detain the alien. 8 U.S.C. § 1231(a)(2). But if the alien is not removed during the removal period, the Attorney General has two options—supervised release (8 U.S.C. § 1231(a)(3)) or, at times, continued detention (8 U.S.C. § 1231(a)(6)).

Section 1231(a)(3) provides:

If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General. The regulations shall include provisions requiring the alien—

(A) to appear before an immigration officer periodically for identification;

(B) to submit, if necessary, to a medical and psychiatric examination at the expense of the United States Government;

(C) to give information under oath about the alien's nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate; and

(D) to obey reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for the alien.

For certain aliens, the INA authorizes continued detention. 8 U.S.C. § 1231(a)(6). While section 1231(a)(6) grants the Attorney General authority to

---

**7.** Section 1231(a)(6) applies to petitioner's detention because he was not in removal proceedings "as of" the effective date of the 1996 INA amendments. 8 U.S.C. § 1101 note (2000). *See also Chavez–Rivas*, 207 F.Supp.2d at 333 (finding that the exception

regarding the applicability of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 for aliens in removal proceedings "as of" the amendments' effective date does not apply to section 1231(a)(6)).

detain certain aliens post removal period, it does not explicitly limit the duration of such continued detention. Section 1231(a)(6) reads:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

The Supreme Court interpreted section 1231(a)(6) last year in *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001).[8] In construing the statute to avoid a serious constitutional question, the Court held that section 1231(a)(6) implicitly limits the Attorney General's authority to detain a formerly admitted alien, after a final order of removal, to the time when their removal is "reasonably foreseeable." *Id.* at 2505. For sake of "uniform administration in the federal courts," the Court held that removal is presumptively reasonably foreseeable for the first six months after the removal period. *Id.* After six months, there must be an independent determination of the likelihood of removal in the reasonably foreseeable future, taking into consideration factors such as the possibility of a repatriation agreement with the country of origin. *Id.*

Petitioner has been detained by the INS in excess of five years since the date his removal order became final. He argues that the *Zadvydas* Court's narrow construction of section 1231(a)(6) applies to inadmissible aliens whose parole has been revoked. The court disagrees. The facts before the court are clearly distinguishable from those in *Zadvydas*, in that petitioner has never entered the United States while the petitioners in *Zadvydas* had. *See* note 8, *infra.* Moreover, to expand the holding of *Zadvydas* to *inadmissible* aliens would disregard decades of immigration law.

 Federal courts have long drawn a distinction between those admitted to the United States and those seeking admission. *See Zadvydas*, 121 S.Ct. at 2500 (citations omitted). Although "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent," *Zadvydas*, 121 S.Ct. at 2500 (citing *Plyler v. Doe*, 457 U.S. 202, 210, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982); *Mathews v. Diaz*, 426 U.S. 67, 77, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976); *Kwong Hai Chew v. Colding*, 344 U.S. 590, 596–98, 598 n. 5, 73 S.Ct. 472, 97 L.Ed. 576 (1953); *Yick Wo v. Hopkins*, 118 U.S. 356, 369, 6 S.Ct. 1064, 30 L.Ed. 220 (1886); *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 73 S.Ct. 625, 97 L.Ed. 956 (1953)), it does not apply equally to foreign citizens seeking admission to the United States. *See Mezei*, 345 U.S. at 210, 73 S.Ct. 625 ("Courts have long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control."); *Zadvydas*, 121 S.Ct. at 2500 (citing *U.S. v. Verdugo–Urquidez*, 494 U.S. 259, 269, 110 S.Ct. 1056, 108 L.Ed.2d 222 (1990) (Fifth Amendment's protections do not extend to

---

**8.** In *Zadvydas*, the Court reviewed habeas petitions coming out of the Fifth Circuit (*Zadvydas v. Underdown*, 185 F.3d 279 (5th Cir. 1999)) and the Ninth Circuit (*Kim Ho Ma v. Reno*, 208 F.3d 815 (9th Cir.2000)). Importantly, both Zadvydas and Ma were legal permanent residents (*i.e.,* they had "entered" the United States) before they were ordered removed. *Zadvydas*, 121 S.Ct. at 2495–97. Both were detained after the applicable removal period under authority of section 1231(a)(6).

aliens outside the territorial boundaries.)) *Johnson v. Eisentrager,* 339 U.S. 763, 784, 70 S.Ct. 936, 94 L.Ed. 1255 (1950) (same); *Ngo,* 192 F.3d at 395–96 ("It is a truism that '[i]n the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens.'") (citing *Mathews v. Diaz,* 426 U.S. at 79–80, 96 S.Ct. 1883).

■ Furthermore, physical presence in the United States alone, by grace of the executive giving temporary harborage, does not extend the constitutional protections to an inadmissible alien which are due every person legally admitted to the United States. *See Mezei, supra.* In *Mezei,* a former legal permanent resident, who for all intents and purposes was the legal equivalent of an alien seeking his first admission into the United States, was denied entry. Instead, he was found excludable[9] and ordered removed. He was then detained on Ellis Island pending his ultimate removal. When no other country would allow the United States to remove him to their territory, he filed a habeas petition challenging his detention on due process grounds. The Supreme Court concluded that "respondent's transfer from ship to shore on Ellis Island conferred no additional rights; in fact, no alien so situated 'can force us to admit him at all.'" *Mezei,* 345 U.S. at 210, 73 S.Ct. 625 (quoting *United States ex rel. Mezei v. Shaughnessy,* 195 F.2d 964 (2d Cir.1952)) (L.Hand, J. dissenting). The Court further stated: "this Court has long considered such temporary arrangements as not affecting an alien's status; he is treated as if stopped at the border." *Id.* at 215, 73 S.Ct. 625. Ultimately, the Court held that

the indefinite, potentially permanent detention of such an alien does not offend the constitution. *Zadvydas,* 121 S.Ct. at 2500 (explaining *Mezei,* 345 U.S. at 215–16, 73 S.Ct. 625).

■ Because petitioner's argument would largely eliminate this historical distinction between admitted and inadmissible aliens, this court does not believe that the Supreme Court intended its interpretation of section 1231(a)(6) in *Zadvydas* to apply to formerly paroled aliens. *See Zadvydas,* 121 S.Ct. at 2500 (explaining that *Mezei's* excludable status "made all the difference."). *See also Hoyte–Mesa v. Ashcroft,* 272 F.3d 989, 991 (7th Cir.2001) (per curiam) (ruling that *Zadvydas* does not abrogate Seventh Circuit precedent upholding indefinite detention of inadmissible aliens); *Chavez–Rivas, supra. But see Borrero v. Aljets,* 178 F.Supp.2d 1034 (D.Minn.2001) (holding that the *Zadvydas'* reasonably foreseeable removal limitation does apply to Mariel Cubans whose parole has been revoked). Consequently, *Zadvydas* does not apply to petitioner's detention. The court finds that the Attorney General, in detaining petitioner, is acting within the scope of his authority under section 1231(a)(6) and, therefore, petitioner's statutory claim fails.

## C. Petitioner's Due Process Claim.

■ Petitioner next claims that "indefinite" detention under section 1231(a)(6) is unconstitutional. The Third Circuit has dealt specifically with the constitutionality of prolonged detention of inadmissible aliens whose country of citizenship will not allow repatriation. *Ngo,* 192 F.3d 390. In *Ngo,* the petitioner was a Vietnamese citi-

---

9. As stated in note 6, *infra,* the 1996 amendments to the INA changed the terminology used to describe the legal status of aliens such as the Mariel Cubans from "excludable" to "inadmissible." *See* 8 U.S.C. § 1182. However, due to the prevalent use of the term "excludable," the court is constrained to use both terms when discussing applicable case-law.

zen whose parole was revoked because of criminal convictions. For unspecified reasons, the United States was unable to remove the petitioner promptly to Vietnam. In denying the constitutional challenge to Mr. Ngo's detention, the Third Circuit held that "excludable aliens with criminal records as specified in the Immigration Act may be detained for lengthy periods when removal is beyond the control of the INS, provided that appropriate provisions for parole are available." *Id.* at 398. *See also In re Mariel Cuban Habeas Corpus Petitions*, 822 F.Supp. 192 (M.D.Pa.1993).

This court is bound by Third Circuit precedent. As noted previously, petitioner, like Mr. Ngo, entered the United States on immigration parole under 8 U.S.C. § 1182(d)(5)(A). Also like Mr. Ngo, petitioner's parole was revoked because of criminal convictions. Therefore, petitioner's detention is constitutional if it meets the parole review requirements outlined in *Ngo*.

Petitioner contends that the Cuban Review Panel "is illegal and only takes place to frustrate and victimize petitioner and all prisoners who are subject to this INS panel's partiality and unfairness." (Doc. 1). *Ngo* held that there is no constitutional impediment if the parole review process provides "reasonable assurance of fair consideration" of the application for parole. *Ngo*, 192 F.3d at 398. Under *Ngo*, each individual's review must be meaningful. *Ngo*, 192 F.3d at 398 ("The stakes are high and we emphasize that grudging and perfunctory review is not enough to satisfy the due process right to liberty, even for aliens.").

Applicable regulations set forth specific procedures for reviewing, on an annual basis, the possibility of parole for detained Mariel Cubans. 8 C.F.R. § 212.12. The INS has followed these procedures assiduously in the course of petitioner's detention. Petitioner has been interviewed year-

ly since being taken into INS custody. (*See* Doc. 6, Exhibits 4–8). Petitioner's mental health has been carefully examined. (Doc. 6, Exhibit 7). The review panels have also reviewed petitioner's criminal history (which includes several assault convictions, including one for indecent assault of a person under the age· of 14) and his behavior since being taken into custody (which includes numerous fights, assaults and other violent behavior). *See* notes 4 and 5 *infra.* Each year the review panel has found petitioner to be a risk to society. In light of the panels' thorough reviews, the court finds that petitioner's parole review process meets the rigorous requirements of *Ngo*. Consequently, petitioner's due process challenge will be denied.

### D. Petitioner's Eighth Amendment Claim.

■ Soto–Ramirez's final argument is that his indefinite detention constitutes cruel and unusual punishment in violation of his Eighth Amendment rights. Federal courts have held that detention prior to removal is not punishment at all. *See Ngo*, 192 F.3d at 396–97 (holding that administrative detention of inadmissible aliens ordered removed is not punishment); *Gisbert v. U.S. Atty. Gen.*, 988 F.2d 1437, 1442 (5th Cir.1993) ("Because aliens subject to exclusion are not entitled to the same constitutional protection as resident aliens, *Jean v. Nelson*, 727 F.2d at 968, we conclude that detention pending removal . and stemming from exclusion proceedings is not intended as punishment."); *Alvarez–Mendez v. Stock*, 941 F.2d 956, 962 (9th Cir.1991) (holding that detention of a Mariel Cuban ordered removed is not punishment).

That Soto–Ramirez frames it as "indefinite" does not change the character of the detention. In reality, the length of his detention now depends on the outcome of

his annual parole reviews. The Third Circuit has aptly described it as "a series of one-year periods of detention followed by an opportunity to plead the case anew." *Ngo*, 192 F.3d at 396 (quoting *Barrera–Echavarria v. Rison*, 44 F.3d 1441, 1450 (9th Cir.1995)). The review panels have examined petitioner annually and, to date, they have found sufficient cause to deny his parole. Accordingly, his continued detention does not constitute cruel and unusual punishment. *Alvarez–Mendez*, 941 F.2d at 962. The court will deny petitioner's Eighth Amendment claim.

For the reasons set forth in this Opinion, the petition for writ of habeas corpus will be denied.

### ORDER

AND NOW, this 29th day of October, 2002, it is hereby ORDERED that the petition for writ of habeas corpus is DENIED, and the Clerk of Court shall close this file.