Xiomara GONZALEZ, Petitioner,

v.

John ASHCROFT, et al., Respondents.

Civil Action No. 03–2290(JLL).

United States District Court,
D. New Jersey.

Aug. 26, 2003.

Regis Fernandez, Newark, NJ, for Petitioner.

Colette R. Buchanan, Asst. United States Attorney, Newark, NJ, for Respondents.

**OPINION**

LINARES, District Judge.

Petitioner Xiomara Gonzalez, an immigration deportee currently confined to the Hudson County Correctional Center in South Kearny, New Jersey, filed a Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging her detention by the Immigration and Naturalization Service ("INS").[1] Respondents John Ashcroft (Attorney General of the United States), Tom Ridge (Secretary of the Department of Homeland Security), Michael Garcia (Assistant Secretary of the Bureau of Immigration and Customs Enforcement), and Ralph Green (Warden, Hudson County Correctional Center), (hereinafter collectively referred to as "Respondents"), filed an Answer opposing the Petition. Counsel appeared before this Court for oral argument on June 18, 2003. For the

---

1. The Homeland Security Act of 2002, 6 U.S.C. §§ 101–507, P.L. 107–296, 116 Stat. 2135 (Nov. 25, 2002), created the Bureau of Citizenship and Immigration Services ("BCIS") within the Department of Homeland Security. 6 U.S.C. § 271(a). The Act transferred the functions of the Commissioner of the INS to the Director of BCIS, 6 U.S.C. § 271(b), and abolished the INS, 6 U.S.C. § 291. For the sake of simplicity, the Court will continue to refer to the agency as the INS throughout the opinion.

reasons set forth in this Opinion, this Court finds that Petitioner's continued post-removal-period detention does not violate her Fifth Amendment right to due process of law, nor is it unauthorized by 8 U.S.C. § 1231(a)(6), as construed by *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). This Court also finds that Respondents failed to provide Petitioner with an individualized parole review in a manner required under terms of the Cuban Review Plan (hereinafter "the Plan"), 8 C.F.R. § 212.12. Accordingly, Respondents are ordered to provide Petitioner with said review within thirty (30) days. The review, shall be provided by the Cuban Review Panel (hereinafter "the Panel"). Furthermore, it is the Order of this Court that if Respondents fail to do so, the Court will, upon Petitioner's request setting forth said failure, grant Petitioner's writ of habeas corpus and order her release under appropriate conditions of supervision.

## BACKGROUND FACTS

The essential facts are not in dispute. Petitioner is a native and citizen of Cuba. (Respondents' Answer and Opposition to the Habeas Corpus Petition, at p. 2.)[2] On or about June 21, 1980, she arrived in the United States as part of the Mariel boat lift from Cuba to Florida. (*Id.*) She was granted discretionary parole into the United States pursuant to the former section 212(d)(5) of the Immigration and Nationality Act (hereinafter referred to as the "INA" or the "Act"), as amended, 8 U.S.C. § 1182(d)(5), on or about August 23, 1980. (Petitioner's Memorandum in Support of Petition for Writ of Habeas Corpus and Order to Show Cause, at p. 1;[3] Respondents' Brief, at p. 2, Exh. 1.)

Petitioner has resided continuously in the United States since being paroled in

1980. (Petitioner's Brief, at p. 1.) Her mother is a lawful permanent resident, who resides in Newark, New Jersey. (*Id.*) Petitioner also has a daughter who is a United States citizen, who also resides in New Jersey. (*Id.*)

On or about March 13, 1987, Petitioner was convicted in the Circuit Court, Dade County, Florida of the offense of Carrying a Concealed Weapon in violation of Florida law. (Respondents' Brief, at p. 2, Exh. 2.) Petitioner received a sentence of three-hundred and sixty-four (364) days in jail. (Respondents' Brief, at pp. 2–3, Exh. 2.) She was also convicted of the offense of Trafficking in Cocaine. (Respondents' Brief, at p. 3, Exh. 3.) She was sentenced to one year of "community control," to run consecutively to the sentence for the weapons offense. (*Id.*)

On or about April 26, 1988, Petitioner filed an application for permanent resident status, pursuant to the Cuban Adjustment Act, Pub.L.No. 89–732, 80 Stat. 1161 (1966). (Respondents' Brief, at p. 3.) Her application was denied by the District Director for the INS in Miami, Florida. (Respondents' Brief, at p. 3, Exh. 4.) He determined that Petitioner was ineligible for adjustment of status based of her conviction for trafficking in cocaine. (*Id.*) On or about October 9, 1990, the Administrative Appeals Unit affirmed the denial of the application. (Respondents' Brief, at p. 3, Exh. 5.)

On or about May 5, 1995, Petitioner was convicted in the Superior Court of New Jersey, Ocean County, of Distribution/Possession with Intent to Distribute Cocaine in violation of New Jersey law. (Respondents' Brief, at p. 3, Exh. 6.) She was sentenced to twenty (20) years in prison with eight (8) years parole ineligibility. (*Id.*)

---

**2.** Referred to hereinafter as "Respondents' Brief."

**3.** Referred to hereinafter as "Petitioner's Brief."

On August 8, 1995, the INS revoked her parole. (Respondents' Brief, at p. 3, Exh. 7.) On June 26, 2002, the INS initiated removal proceedings against Petitioner through the issuance of a Notice to Appear. (Respondents' Brief, at p. 3, Exh. 8.) The Notice indicated that Petitioner was subject to removal as a result of the 1987 drug trafficking conviction.[4] (*Id.*)

On June 27, 2002, the Cuban Review Panel performed a Custody Review. (Respondents' Brief, at p. 3, Exh. 9.) The Panel made the decision to detain Petitioner. (*Id.*) On or about July 1, 2002, Petitioner was released from New Jersey State custody to the custody of the INS and detained. (Respondents' Brief, at p. 3.) On July 26, 2002, Immigration Judge Daniel A. Meisner entered a final order of removal. (Petitioner's Brief, at p. 1, Exh. A.) Petitioner did not appeal the order. (*Id.*) Petitioner has remained in INS custody at the Hudson County Correctional Center. (Petitioner's Brief, at p. 1.)

Petitioner explains that she has made several requests for an impartial parole hearing in an effort to secure release from detention. (Petitioner's Brief, at p. 2; Verified Habeas Corpus Petition, Exhs. B, F and G.) On June 26, 2002, she submitted a parole request packet to the Cuban Review Panel. (Petitioner's Brief, at p. 2; Verified Habeas Corpus Petition, Exh. B.) She failed to receive a response, therefore, on October 3, 2002, she submitted a writ-ten inquiry to the panel. (Petitioner's Brief, at p. 2; Verified Habeas Corpus Petition, Exh. F.) On October 21, 2002, Petitioner made another parole hearing request to the Panel. (Petitioner's Brief, at p. 2; Verified Habeas Corpus Petition, Exh. G.) To date, Petitioner has not been provided a custody review and remains detained at the Hudson County Correctional Center. (Petitioner's Brief, at p. 2.) Petitioner further explains that her physical condition is in a deteriorating state. (Petitioner's Reply Brief, at p. 7). At the time the petition was filed, Petitioner was scheduled to be transferred to Oakdale, Louisiana, for a review. (Respondents' Brief, at p. 4.) Respondents explain that after the filing of the petition, they agreed to Petitioner's request to halt her transfer to Louisiana. (Respondents' Brief, at p. 4.)

Petitioner seeks release on the grounds that her removal from the United States is not reasonably foreseeable, her post-removal confinement is not authorized by 8 U.S.C. § 1231(a)(6), as construed by *Zadvydas*, and it violates her Fifth Amendment right to due process of law. In the alternative, she seeks an individualized parole hearing by an immigration judge, for purposes of custody review.

## DISCUSSION

### A. Jurisdiction

Section 2241 of Title 28 of the United States Code provides, in relevant part:

> controlled substance ....'; and finally, 8 U.S.C. § 1182(a)(7)(A)(i)(I), which applies to aliens who, at the time for application for admission, are not in possession "of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality...." (Respondents' Brief, Exh. 8.)

---

**4.** The Notice to Appear specified that Petitioner was subject to removal pursuant to the following provisions: 8 U.S.C. § 1182(a)(2)(A)(i)(II), which provides that any alien convicted of "a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States or a foreign country relating to a controlled substance ...." is inadmissible; 8 U.S.C. § 1182(a)(2)(C)(i), which applies to aliens the Attorney General knows or has reason to believe has been "an illicit trafficker in any

The writ of habeas corpus shall not extend to a prisoner unless... He is in custody in violation of the Constitution or laws or treaties of the Unites States. 28 U.S.C. § 2241(c)(3).

A district court has subject matter jurisdiction under 28 U.S.C. § 2241(c)(3) to grant a petition for a writ of habeas corpus where the petitioner is in custody in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. § 2241(c)(3). This Court has jurisdiction under § 2241 to consider Petitioner's statutory and constitutional challenge to his post-removal detention. *Zadvydas,* 533 U.S. at 688, 121 S.Ct. 2491.

## B. Constitutional Authority for Post–Removal–Period Detention

Petitioner contends that her continued post-removal-period detention violates her Fifth Amendment right to due process of law. U.S. CONST. amend V. She argues that her detention is unconstitutional because it has exceeded six months, the presumptive reasonable period of post-removal-period detention set forth in *Zadvydas*. *Zadvydas,* 533 U.S. at 701, 121 S.Ct. 2491. Respondents counter that the *Zadvydas* decision does not apply to Petitioner, as that decision only applies to lawful permanent residents and other aliens who have been admitted to the United States.[5]

In *Zadvydas,* the United States Supreme Court addressed the government's statutory authority under § 1231(a)(6) to detain indefinitely "aliens who were admitted to the United States but subsequently ordered removed." *Zadvydas,* 533 U.S. at 682, 121 S.Ct. 2491. Both petitioners in *Zadvydas* were admitted aliens. The first, immigrated to the United States from Germany with his parents at the age of eight.

In 1994, he was ordered removed to Germany based on his lengthy criminal history. He remained in INS custody, as his removal was not effectuated because Germany, Lithuania and the Dominican Republic refused to accept him. The second alien, a native of Cambodia, was admitted to the United States as a resident alien at the age of seven. He was ordered removed based on a conviction for manslaughter. He remained in INS custody, as Cambodia refused to accept him. The Court held that "the statute ... limits an alien's post-removal-period detention to a period reasonable necessary to bring about that aliens's removal from the United States...." *Id.* at 689, 121 S.Ct. 2491. The Court recognized six months as constituting the presumptive reasonable period of detention under § 1231(a)(6), upon which to effectuate removal. *Id.* at 701, 121 S.Ct. 2491.

■ Petitioner concedes that she was never admitted to the United States. She is here as a result of having been granted discretionary parole pursuant 8 U.S.C. § 1182(d)(5), soon after her entry into the United States. Section 1182(d)(5)(A) then, and as amended, authorizes the Attorney General to parole aliens into the United States on a temporary basis under conditions he prescribes. This provision specifically provides, however, that "such parole of such alien shall not be regarded as an admission of the alien...." 8 U.S.C. § 1182(d)(5)(A). Furthermore, the definitional section of the INA specifies that "[a]n alien who is paroled under section 1182(d) ... shall not be considered to have been admitted." 8 U.S.C. 1101(a)(13)(B). Indeed, it is well-established that an alien paroled into the United States has not

---

**5.** The "terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A).

effected an "entry." *Leng May Ma v. Barber,* 357 U.S. 185, 188–90, 78 S.Ct. 1072, 2 L.Ed.2d 1246 (1958); *Zadvydas,* 533 U.S. at 693, 121 S.Ct. 2491; *Delgado–Carrera v. United States I.N.S.,* 773 F.2d 629, 632 (5th Cir.1985)(holding that an alien placed on parole is in the same position as any other applicant for admission to the United States); *Yuen Sang Low v. Attorney General of the United States,* 479 F.2d 820, 823 (9th Cir.1973), *cert. denied,* 414 U.S. 1039, 94 S.Ct. 539, 38 L.Ed.2d 330 (1973)("[A]liens paroled into the United States have not been admitted into the United States."). Accordingly, Petitioner is not deemed to have effected entry into the United States.

Petitioner argues, however, that she is not on the threshold of "entry" into the United States, and as such, her situation can be distinguished from that of the multitude of applicants for admission devoid of any ties to this country. She argues that by virtue of her ties in the United States, namely, her citizen daughter, lawful permanent resident mother and length of residence in the United States, she is not on the same footing as other applicants for admission. Petitioner's argument on this point, however, fails. "Although aliens seeking admission into the United States may physically be allowed within its borders pending a determination of admissibility, such aliens are legally considered to be detained at the border and hence as never having effected entry into this country." *Gisbert v. United States Atty. Gen.,* 988 F.2d 1437, 1440 (5th. Cir.1993)(citing *Garcia–Mir v. Smith,* 766 F.2d 1478, 1484 (11th Cir.1985), *cert. denied,* 475 U.S. 1022, 106 S.Ct. 1213, 89 L.Ed.2d 325 (1986)); *Shaughnessy v. United States ex rel. Mezei,* 345 U.S. 206, 215, 73 S.Ct. 625, 97 L.Ed. 956 (1953)(excluded alien held at Ellis Is-

land was treated "as if stopped at the border...."); *Kaplan v. Tod,* 267 U.S. 228, 230, 45 S.Ct. 257, 69 L.Ed. 585 (1925)(an excluded alien present in the United States for nine years "was still in theory of law at the boundary line and had gained no foothold in the United States."). Here, the fact that Petitioner has been physically present in the United States for a significant period of time and has familial ties in this Country does not affect the applicability of said precedent, thus, she still has not effected entry into the United States.

■ As Petitioner has not effected entry into the United States, and is thus considered an applicant for entry, she qualifies as an inadmissible alien based on her criminal history. Under the Act, an alien convicted of certain enumerated crimes occupies the status of inadmissible alien. 8 U.S.C. § 1182(a)(2)(A). Section 1182 provides that any alien convicted of "a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States or a foreign country relating to a controlled substance ...." is inadmissible. 8 U.S.C. § 1182(a)(2)(A)(i)(II). Petitioner satisfies the definition of an inadmissible alien under the statute because she was convicted of Trafficking in Cocaine in the Circuit Court, Dade County, Florida, on March 13, 1987. Furthermore, section 1182 provides that any alien who the Attorney General knows or has reason to believe has been "an illicit trafficker in any controlled substance ...." is inadmissible. 8 U.S.C. § 1182(a)(2)(C)(i). Petitioner qualifies as inadmissible under this subsection as well, based on the aforementioned conviction for trafficking in cocaine. Therefore, Petitioner's status is that of an inadmissible alien.[6]

---

6. As Respondents correctly note, prior to Illegal Immigration Reform and Immigration Re-

sponsibility Act of 1996 ("IIRIRA"), 110 Stat. 3009–546, aliens subject to removal were sep-

Respondents contend that applicants for admission such as Petitioner cannot claim a constitutional right to enter the United States, even temporarily. *Kleindienst v. Mandel,* 408 U.S. 753, 762, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972)("no constitutional right of entry. . . ."); *United States ex rel. Knauff v. Shaughnessy,* 338 U.S. 537, 542–44, 70 S.Ct. 309, 94 L.Ed. 317 (1950). They rely on the Court's decision in *Mezei,* for the proposition that the Fifth Amendment does not afford an excludable alien any right against continued immigration custody, even if such detention is indefinite or prolonged based on the fact that no country is willing to accept the alien. *Mezei,* 345 U.S. at 215–16, 73 S.Ct. 625.

*Zadvydas* involved the prolonged post-order detention of criminal aliens who were admitted to the United States. Respondents contend that *Zadvydas* differs from the case at bar in that it applies only to aliens who have effected entry into the United States and not to inadmissible or excludable aliens like Petitioner. *Zadvydas,* 533 U.S. at 692–94, 121 S.Ct. 2491. As Respondents explain, the majority opinion in *Zadvydas* questions but does not decide the issue of whether prolonged detention of deportable aliens violates the Constitution. *Id.* at 692–94, 121 S.Ct. 2491.

Respondents maintain that if an alien has not entered the country, the Due Process Clause does not apply, at least not in the same manner as it does to those who have entered. They explain that in analyzing the potential constitutional problem raised by the detention of the aliens in *Zadvydas,* the Court distinguished *Mezei,* where the Court held that the prolonged detention of an excludable alien did not violate the Constitution. *Zadvydas,* 533 U.S. at 693, 121 S.Ct. 2491; *Mezei,* 345 U.S. at 215–16, 73 S.Ct. 625. The *Zadvydas* Court noted that *Mezei* "differ[ed] from [Zadvydas] in a critical respect;" namely, petitioner therein was seeking entry to the United States. "Hence, he was 'treated,' for constitutional purposes, 'as if stopped at the border.'" *Zadvydas,* 533 U.S. at 693, 121 S.Ct. 2491 (quoting *Mezei,* 345 U.S. at 213, 215, 73 S.Ct. 625). The Court further stated, "it is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside our geographic borders." *Id.* (citing *United States v. Verdugo–Urquidez,* 494 U.S. 259, 269, 110 S.Ct. 1056, 108 L.Ed.2d 222 (1990) and *Johnson v. Eisentrager,* 339 U.S. 763, 784, 70 S.Ct. 936, 94 L.Ed. 1255 (1950)). Thus, it is clear that the Court recognized a distinction between the constitutional rights available to removable aliens, versus the rights accorded inadmissible aliens.

Respondents also rely on the Third Circuit decision *Chi Thon Ngo v. I.N.S.,* 192 F.3d 390 (3d Cir.1999), in support of the prolonged detention of excludable criminal aliens who could not be deported based on the refusal of their native country to accept them. In *Ngo,* the petitioner was a Vietnamese national whose parole was revoked as a result of criminal convictions. In denying petitioner's constitutional challenge to his detention, the Third Circuit

---

arated into two categories. The first, aliens seeking admission and entry into the United States, were designated "excludable." 8 U.S.C. § 1182 (1994). The second category, aliens who had gained lawful admission or entered without permission, were designated "deportable." 8 U.S.C. § 1251 (1994). Under IIRIRA, the category of "excludable" aliens was replaced with a new category— "inadmissible" aliens. 8 U.S.C. § 1182. This new category of "inadmissible" aliens includes both aliens who have entered without permission in violation of § 1182(a)(6)(A), and aliens who have not entered but satisfy one of the grounds for inadmissibility set forth in § 1182(a). 8 U.S.C. 1182(a).

held that "excludable aliens with criminal records as specified in the Immigration Act may be detained for lengthy periods when removal is beyond the control of the INS, *provided that appropriate provisions for parole are available." Ngo*, 192 F.3d at 398 (emphasis added). The court concluded that prolonged detention of an inadmissible alien "is constitutional *if the government provides individualized periodic review of the alien's eligibility for release on parole." Id.* at 392 (emphasis added).

Petitioner argues that the *Ngo* court's interpretation of the statute is no longer applicable because in *Zadvydas* the Supreme Court provided a constitutionally sound interpretation of the statute. Respondents counter that *Zadvydas* did not undermine *Ngo*, and therefore, that *Ngo* controls Petitioner's case. In a post-*Zadvydas* case originating in the Middle District of Pennsylvania, the court, in rejecting a Mariel Cuban's constitutional challenge to his post-removal-period detention, held that is was bound by the Third Circuit's decision in *Ngo. Soto–Ramirez v. Ashcroft*, 228 F.Supp.2d 566, 573 (M.D.Pa.2002). In *Chavez–Rivas v. Olsen*, 207 F.Supp.2d 326, 330 (D.N.J.2002), Judge Orlofsky held that the *Zadvydas* Court did not make a constitutional holding. Judge Orlofsky reasoned:

> The Supreme Court, technically, made no constitutional holding at all in *Zadvydas.* Rather, it determined that in light of the potential constitutional problem that would arise were it to read the INA to authorize indefinite detention of certain aliens, it would instead read the statute as not, in fact, providing such authorization.

*Chavez–Rivas*, 207 F.Supp.2d at 330 (citing *Zadvydas*, 533 U.S. at 689–90, 121 S.Ct. 2491).

This Court finds as did Judge Conner in *Soto–Ramirez*, that it is bound by the *Ngo*

decision as it pertains to Petitioner's constitutional challenge to her detention, and also agrees with Judge Orlofsky's reasoning in *Chavez–Rivas.* Accordingly, Petitioner's continued detention is, in this Court's opinion, constitutional, as long as it meets the individualized parole review provisions set forth in 8 C.F.R. § 212.12. This finding by this Court is amply supported by the majority of the circuit courts of appeals that have addressed this issue, as well as numerous district court cases.

A majority of the circuit courts of appeals which have addressed the issue presently before this Court, have rejected post-*Zadvydas* claims by Mariel Cuban detainees. For example, in the Fifth Circuit case *Rios v. I.N.S.*, 324 F.3d 296 (5th Cir.2003), the petitioner, a Mariel Cuban, (following a state criminal conviction) was taken into INS custody in 1998. Relying on *Zadvydas,* Rios argued that his continued detention violated his constitutional rights. The court interpreted the *Zadvydas* decision as "distinguish[ing] the status of deportable aliens from that of excludable aliens like Rios." *Rios*, 324 F.3d at 297. The court affirmed the district court's denial of his habeas petition. *Id.* at 297; *see also Hoyte–Mesa v. Ashcroft,* 272 F.3d 989, 991 (7th Cir.2001)(where the court, in affirming the district court's denial of Mariel Cuban's habeas petition, reasoned that *Mezei* provided the authority to "constitutionally detain an excludable alien indefinitely if his country of origin refused to accept his return."); *Borrero v. Aljets,* 325 F.3d 1003, 1007 (8th Cir.2003)(involving a Mariel Cuban's challenge to a post conviction detention, where the court stated that "[i]n light of the fact that *Zadvydas* expressly distinguished *Mezei* on the grounds that *Mezei* had not made an entry into the United States, we conclude that *Zadvydas's* six-month presumption of rea-

sonableness is inapplicable to inadmissible aliens.").

As Respondents allege, numerous district court cases have also rejected post-*Zadvydas* claims by Mariel Cubans. *See, e.g., Hernandez Nodarse v. United States,* 166 F.Supp.2d 538, 546 (S.D.Tex.2001)("*Zadvydas* is inapplicable to aliens who are subject to orders of exclusion . . . ."); *Fernandez–Fajardo v. I.N.S.,* 193 F.Supp.2d 877, 887 (M.D.La.2001)(holding that the indefinite detention of excludable alien does not violate due process); *Morales v. Conley,* 224 F.Supp.2d 1070, 1075 (S.D.W.V.2002)(concluding that the *Zadvydas* decision does not require immediate release of a Mariel Cuban in INS custody since 1993, following the completion of a ten (10) month sentence in state correctional facility); *Soto–Ramirez,* 228 F.Supp.2d at 573 (finding that indefinite detention did not violate the Due Process Clause, where appropriate provisions for parole had been followed).

In several recent post-*Zadvydas* decisions, this District has addressed the issue of whether the post-removal-period detention of inadmissible aliens, in particular Mariel Cubans, must conform to the *Zadvydas* reasonable time period. In *Herrero–Rodriguez v. Bailey,* 237 F.Supp.2d 543 (D.N.J.2002), petitioner, a Mariel boat lift Cuban, petitioned for habeas relief pursuant to § 2241. He had been detained by the INS for over two years. As here, petitioner therein argued that the *Zadvydas* decision should be extended to inadmissible aliens and that he should have been released from INS custody, since his post-removal suspension had been in excess of the presumptively reasonable six-month period set forth in *Zadvydas.* Judge Simandle disagreed, and held that a detained inadmissible aliens did not have the same due process rights as removable aliens, and thus, was not entitled to the six-month presumption set forth in *Zadvydas.* *Herrero–Rodriguez,* 237 F.Supp.2d at 547–48. The court reasoned:

> [T]he Supreme Court's decision in *Zadvydas* did not interpret 8 U.S.C. §§ 1231(a)(6) as applying equally to inadmissible aliens, for the Court impliedly acknowledged that a different issue would be presented had the petitioner been an inadmissible alien. Rather, the Court explicitly recognized a disparity between the constitutional rights afforded deportable aliens versus rights accorded to inadmissible aliens . . . .

*Id.* at 549.

The court further stated:

> In fact, most courts do not read *Zadvydas* as elevating the status of inadmissible aliens, so as to require the INS to release Mariel Cubans from custody where it cannot be shown that repatriation is possible within the foreseeable future. The majority of federal courts that have addressed the constitutional rights of inadmissible aliens in the context of potentially indefinite detention since *Zadvydas* have concluded that inadmissible aliens are not afforded the same Due Process rights as deportable aliens and, hence, are not *ipso facto* entitled to release when deportation to their country of origin is unlikely in the reasonably foreseeable future.

*Id.*

Similarly, in *Damas–Garcia v. United States,* 2001 WL 1231480 (D.N.J. Oct.17, 2001), petitioner therein, also a Mariel boat lift Cuban, petitioned for habeas relief. He argued that the legal distinction between inadmissible aliens and other aliens residing in the United States raises substantial constitutional questions. The court responded, "petitioner is considered an excludable alien and has not gained lawful admission to the United States."

*Damas–Garcia,* 2001 WL 1231480, at *5. The court held that because petitioner was an excludable alien, his "argument that the distinction between excludable and other aliens is unconstitutional is without merit." *Id.* Furthermore, in *Chavez–Rivas,* which was previously discussed, the court relied on the Third Circuit decision in *Ngo,* as support for the constitutionality of petitioner's detention. The court, relying on the *Ngo* decision, specifically stated, "[t]he Third Circuit has already upheld the constitutionality of the indefinite detention of aliens having the same legal status as [petitioner]." *Chavez–Rivas,* 207 F.Supp.2d at 330.

In summary, it is the holding of this Court that the *Ngo* decision is still controlling as it pertains to Petitioner's constitutional challenge to post-removal detention. Therefore, this Court finds that Petitioner's detention is constitutional, as long as the government provides individualized periodic review of her eligibility for release on parole. *Ngo,* 192 F.3d 390. No violation of a Fifth Amendment right to due process has occurred as Petitioner is a parolee who has not effected entry into the United States, and furthermore, qualifies as inadmissible under the Act based on her criminal record. The Court will now consider whether there is statutory authority to detain Petitioner.

## C. Statutory Authority for Post–Removal–Period Detention

■ Respondents maintain that the INS has authority under several statutory provisions to continue to detain Petitioner.

First, Respondents rely on the detention and parole provisions located in former INA § 236(e),[former 8 U.S.C. § 1226(e)(1994)], as the statutory authority to detain Petitioner. Former INA § 236(e) directs the Attorney General to "take into custody any [excludable] alien convicted of an aggravated felony upon release of the alien" from criminal confinement. 8 U.S.C. § 1226(e)(1) (1994). The Attorney General "shall not release such felon from custody" unless he determines both: (1) that the alien's own country of nationality or citizenship has "denie[d] or unduly delay[ed] acceptance of the return" of the alien; and (2) "that the alien will not pose a danger to the safety of other persons or property" if she is released. 8 U.S.C. §§ 1226(e)(2), 1226(e)(3)(C), 1253(g) (1994). In support on their contention that *former* § 236(e) of the INA applies here, Respondents rely on the Third Circuit *Ngo* decision, where the court held, "[b]ecause both the former and present statutes grant the Attorney General authority to detain, we need not and do not decide which version currently applies [to authorize the detention of an excludable, criminal alien who cannot be repatriated]." *Ngo,* 192 F.3d at 395. However, even if, as Respondents contend, this Court were to hold that the former INA § 236(e) is applicable here, it does not appear that this provision authorizes Petitioner's continued detention. It is not seriously disputed that Petitioner's country of nationality, namely, Cuba, has "unduly delay[ed] acceptance of the return" of Petitioner. 8 U.S.C. §§ 1226(e)(2) and 1253(g) (1994).[7] However, no facts have been alleged or

---

7. Respondents advise that Cuba has repatriated approximately 2,746 criminal aliens since the 1984 migration agreement between Cuba and the United States. Charles D. Weisselberg, *The Exclusion and Detention of Aliens: Lessons From the Lives of Ellen Knauff and Ignatz Mezei,* 143 U. Pa. L.Rev. 993, 998, n. 335 (1995)(advising that pursuant to the De-

cember 1984 migration agreement, Cuba consented to the return of approximately 2,746 Mariel Cubans.) This Court, however, is not prepared to conclude that there is a "likelihood of removal in the reasonably foreseeable future" for Mariel Cuban aliens, like Petitioner.

presented, to this Court to indicate that Petitioner at this time "pose[s] a danger to the safety of other persons or property" if she is released. 8 U.S.C. §§ 1226(e)(3) (1994). Both elements must be present in order to authorize custody of Petitioner. 8 U.S.C. §§ 1226(e)(2), 1226(e)(3)(C), 1253(g) (1994). Accordingly, this Court does not find that former INA § 236(e) provides statutory authority to detain Petitioner.

Next, Respondents rely upon the provisions of the Act governing aliens convicted of a drug trafficking offense, as authority to detain Petitioner. Respondents contend that under the current version of the INA, Petitioner is subject to detention under 8 U.S.C. §§ 1231(a)(1) and (a)(2), as she is an excludable alien ordered deported based on a criminal conviction for a drug trafficking crime. Section 1231, entitled "Detention and removal of aliens ordered removed," authorizes post-removal detention of aliens. Section 1231(a)(1) does not, however, authorize "detention;" this provision only authorizes "removal" of aliens. This section provides that, "[e]xcept as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). Consequently, this provision does not provide statutory authority to detain Petitioner.

Section 1231(a)(2), which governs detention of aliens, requires that the Attorney General detain the alien during the 90–day removal period.[8] It provides: "[d]uring the removal period, the Attorney General shall detain the alien who has been found inadmissible under section 1182(a)(2) or

1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title." 8 U.S.C. § 1231(a)(2). Here, § 1231(a)(2) required that the Attorney General detain Petitioner during the 90–day removal period, which, for Petitioner, began on July 1, 2002, the date she was released from the custody of New Jersey and placed in to the custody of the INS. Section 1231(a)(2) does not, however, provide authority for detention of Petitioner beyond the initial 90–day removal period, which ended on or about September 30, 2002.

Finally, Respondents contend that current 8 U.S.C. § 1231(a)(6) authorizes the Attorney General to retain custody of any inadmissible alien, as well as criminal aliens and other dangerous aliens, when they cannot be promptly removed from the United States. Section 1231(a)(6) provides:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

Section 1231(a)(6) authorizes the post-removal-period detention of certain categories of aliens who have been ordered removed. *Zadvydas*, 533 U.S. at 682, 121 S.Ct. 2491.

The post-removal-period detention statute applies to certain categories of aliens

---

**8.** The removal period begins on the latest of the following: (i) The date the order of removal becomes administratively final.; (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order; or, (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement. 8 U.S.C. § 1231(a)(1)(B).

who have been ordered removed, namely, inadmissible aliens, criminal aliens, aliens who have violated their nonimmigrant status conditions, and aliens removable for certain national security or foreign relations reasons, as well as any alien 'who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal.' 8 U.S.C. § 1231(a)(6).

*Id.* at 688, 121 S.Ct. 2491.

While Respondents recognize that *Zadvydas* read a temporal limit into the port-removal-period detention authorized under § 1236(a)(6), they contend that the decision does not apply to Petitioner, as she is an alien who has not effected entry, and is treated as seeking admission. *Hoyte–Mesa,* 272 F.3d at 991; *Borrero,* 325 F.3d at 1007; *Rios,* 324 F.3d at 297; *Herrero–Rodriguez,* 237 F.Supp.2d at 547–551; *Soto–Ramirez,* 228 F.Supp.2d at 570–72. Furthermore, she qualifies as an inadmissible alien based on her criminal history. 8 U.S.C. §§ 1182(a)(2)(A)(i)(II) and 1182(a)(2)(C)(i). Thus, Respondents argue, the detention of Petitioner is statutorily authorized. Moreover, they argue, Petitioner lacks any express statutory right to admission or release on immigration parole pending repatriation. *Knauff,* 338 U.S. at 542–44, 70 S.Ct. 309.

In response, Petitioner maintains that her continued post-removal-period detention is no longer authorized by 8 U.S.C. § 1236(a)(6), as construed by *Zadvydas.* Specifically, Petitioner argues that once the Supreme Court interprets the statute to avoid constitutional infirmity, that interpretation must be applied to all persons affected by the statute. In support, she relies primarily on the Sixth Circuit decision *Rosales–Garcia v. Holland,* 322 F.3d 386 (6th Cir.2003), *cert. denied,* —— U.S. ——, 123 S.Ct. 2607, 156 L.Ed.2d 627

(2003), and the Ninth Circuit decision *Lin Guo Xi v. United States Immigration & Naturalization Service,* 298 F.3d 832 (9th Cir.2002), for the proposition that the *Zadvydas* decision applies to both removable and inadmissible aliens.

In *Xi,* a citizen of China, apprehended by the Coast Guard on the coast of Guam, was ordered removed as inadmissible and was detained pursuant to § 1236(a)(6). He filed a habeas corpus petition challenging his continued detention. The Ninth Circuit concluded that petitioner fell within the ambit of § 1236(a)(6), and, consequently, within the Court's holding in *Zadvydas. Xi,* 298 F.3d at 834. The court reasoned:

> Section 1231(a)(6), however, does not draw any distinction between individuals who are removable on grounds of inadmissibility and those removable on grounds of deportability. On its face, the statute applies symmetrically to three classes of aliens: (1) those who are "inadmissible under section 1182;" (2) those who are deportable under sections 1227(a)(1)(C) (violation of nonimmigrant status or condition of entry), 1227(a)(2) (criminal offenses), or 1227(a)(4) (security and related grounds); or (3) those who are a risk to the community or unlikely to comply with the removal order.

*Id.* at 835.

The court reversed the district court's denial of petitioner's habeas application. *Id.* at 840.

The Sixth Circuit case *Rosales–Garcia* also involved a challenge to continued detention under § 1236(a)(6), following the revocation of parole. The *Rosales–Garcia* court reasoned that on its face, the statute does not make exceptions for inadmissible aliens. The court stated,

> On the basis of the plain language of the provision, we find it difficult to believe

that the Supreme Court in *Zadvydas* could interpret § 1231(a)(6) as containing a reasonableness limitation for aliens who are removable on grounds of deportability but not for aliens who are removable on grounds of inadmissibility. Section 1231(a)(6) itself does not draw any distinction between the categories of removable aliens; nor would there be any statutory reason to interpret 'detained beyond the removal period' differently for aliens who are removable on grounds of inadmissibility and aliens who are removable on grounds of deportability.

*Rosales–Garcia,* 322 F.3d at 404–05.

The court relied, in part, on the Third Circuit decision *Chmakov v. Blackman,* 266 F.3d 210, 215 (3d Cir.2001), which it construed as "a case addressing a remarkable similar issue of statutory construction." *Rosales–Garcia,* 322 F.3d at 406. " 'It simply cannot be that the meaning will change depending on the background or pedigree of the petitioner. Were we to so hold, we would render the meaning of any statute as changeable as the currents of the sea....' " *Id.* (quoting *Chmakov,* 266 F.3d at 215). The court reversed the district court's denial of the petitioners' habeas petitions. *Id.* at 215.

In *Chmakov,* non-criminal aliens filed a writ of habeas corpus in the district court, alleging that their due process rights had been violated because they received ineffective assistance of counsel during proceedings before the Board of Immigration Appeals ("BIA"). The INS successfully moved to dismiss, arguing that the district court lacked subject matter jurisdiction. The INS argued that provisions of the Antiterrorism and Effective Death Penalty

Act of 1996 ("AEDPA"), 110 Stat. 1214, and IIRIRA, stripped the district courts of jurisdiction to hear the petitioners' habeas petitions. It was not disputed that following the Supreme Court's ruling in *I.N.S. v. St. Cyr,* 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), that aliens ordered deported on the basis of certain *criminal* convictions retained the right to seek review of their claim by habeas petition. The INS contended that in the *non-criminal* setting, Congress stripped the district courts of jurisdiction over habeas petitions. The Third Circuit rejected this argument. The court stated:

> [T]hose [AEDPA and IIRIRA] provisions have a particular meaning, and that meaning does not indicate a congressional intent to repeal habeas jurisdiction. It simply cannot be that the meaning will change depending on the background or pedigree of the petitioner. Were we to so hold, we would render the meaning of any statute as changeable as the currents of the sea, and potentially as cruel and capricious.

*Chmakov,* 266 F.3d at 215.

█ The court concluded that "Congress has preserved the right to habeas review for both criminal and non-criminal aliens". *Id.* As mentioned above, Petitioner contends that once the Supreme Court interprets the statute to avoid constitutional infirmity, that interpretation must be applied to all persons affected by the statute. She maintains that the *Chmakov* court read the statute in a way that avoided constitutional infirmity and determined that the statute should be interpreted the same for both criminal and non-criminal aliens seeking judicial review.[9]

---

**9.** The doctrine of constitutional avoidance provides that courts should "first ascertain whether a construction of the statute is fairly possible by which the [constitutional] ques-

tion may be avoided." *Crowell v. Benson,* 285 U.S. 22, 62, 52 S.Ct. 285, 76 L.Ed. 598 (1932).

This Court agrees with the holding in *Chavez–Rivas*, that *Chmakov* did not rest on constitutional avoidance issues. *Chavez–Rivas*, 207 F.Supp.2d at 334. It appears that the *Chmakov* court's decision upholding habeas jurisdiction for non-criminal aliens was based on the common law canon "requiring a clear statement of congressional intent to repeal habeas jurisdiction." *Chmakov*, 266 F.3d at 213. This precise argument was rejected by the court in *Chavez–Rivas*. That court reasoned, "[a] universal rule that a Supreme Court interpretation avoiding serious constitutional questions applies to every conceivable application of the statute would dramatically expand the power of the courts at the expense of Congress." *Chavez–Rivas*, 207 F.Supp.2d at 334. The court further stated that courts should "avoid constitutional problems only as to those portions of the statute that present constitutional difficulties." *Id.* Similarly, the court in *Herrero–Rodriguez*, stated that "lower courts are not constrained by the . . . canon of constitutional avoidance in particular, when examining whether the potentially indefinite detention of inadmissible aliens violates constitutional rights." *Herrero–Rodriguez*, 237 F.Supp.2d at 550–51.

In *Borrero*, the Eighth Circuit specifically rejected the argument proffered by Petitioner herein, namely, that *Zadvydas* mandates the uniform application of § 1231(a)(6) to all aliens. The *Borrero* court reasoned, "[n]oting that § 1231(a)(6) applies to 'terrorists and criminals,' . . . the [*Zadvydas*] Court stated that 'terrorism or other special circumstances' may justify greater deference to Congress and the Executive." *Borrero*, 325 F.3d at 1007 (citing *Zadvydas*, 533 U.S. at 696, 121

S.Ct. 2491). Thus, *Zadvydas* determined that aliens who were terrorists are not necessarily subject to the six month presumption of reasonableness, even though the alien fell into one of the classifications enumerated in § 1231(a)(6); namely, § 1182.[10] Therefore, the *Zadvydas* Court's interpretation of § 1231(a)(6), which imposed a six month presumption of reasonableness with respect to the petitioners therein, who were admitted aliens, is clearly not applicable to all persons affected by the statute. Therefore, this Court rejects Petitioner's argument that the *Zadvydas* Court's efforts to avoid constitutional infirmity with respect to certain classes of removable aliens identified in § 1231(a)(6), applies to all aliens listed, including those removable on the grounds of inadmissability, like Petitioner. Consequently, this Court holds that the fact that § 1231(a)(6) does not draw a distinction between the categories of removable aliens is of no consequence.

This Court concludes that the *Zadvydas* reasonable time period limitation on post-removal-period detention is limited to admitted aliens. As Petitioner is deemed inadmissible pursuant to 8 U.S.C. §§ 1182(a)(2)(A)(i)(II) and 1182(a)(2)(C)(i), this Court holds that her continued post-removal-period detention is authorized under § 1231(a)(6).

**D. Impartial Individualized Parole Review**

■ Petitioner contends that her continued detention pursuant to the Cuban Review Plan, 8 C.F.R. § 212.12, is unlawful absent meaningful and periodic individualized custody reviews. She relies on the *Ngo* decision, where the Third Circuit held that prolonged detention of an inadmissi-

---

**10.** The Act specifically provides that any alien who "has engaged in terrorist activity" is

inadmissible. 8 U.S.C. 1182(a)(3)(B)(i)(I).

ble alien is permissible if the government provides individualized periodic review of the alien's eligibility for release on parole. *Ngo*, 192 F.3d at 392. She maintains that despite repeated requests beginning over a year ago, she has not received an individualized parole review, as required under 8 C.F.R. § 212.12 and *Ngo*.

The Plan governs the detention of aliens arriving from Cuba between April 15, 1980, and October 20, 1980. 8 C.F.R. § 212.12(a). Petitioner's detention is governed by the Plan, as she arrived from Cuba on or about June 21, 1980. The Plan provides that each detainee will be evaluated by a Cuban Review Panel, which consists of two (2) members of the INS professional staff. 8 C.F.R. § 212.12(d)(1). In exercising parole authority, members of the Panel are required to consider the following factors: whether the Petitioner was likely to remain non-violent; whether Petitioner posed a danger to society; and whether Petitioner was likely to violate the conditions of parole. 8 C.F.R. § 212.12(d)(2). The Plan also provides a list of seven additional factors to guide the Panel in its determination whether to recommend further detention or release detainee on parole. 8 C.F.R. § 212.12(d)(3).

Initially, a file review must be scheduled within three (3) months after parole is revoked. 8 C.F.R. § 212.12(g)(1). Thereafter, a subsequent review must be provided within one (1) year of the refusal to grant parole. 8 C.F.R. § 212.12(g)(2). Here, the Panel performed a custody review on June 27, 2002, where it decided to detain Petitioner. Petitioner maintains that despite repeated written and oral requests, her custody review requests have been completely ignored. She advises that on June 26, 2002, she submitted a parole request packet to the Panel. She failed to receive a response, and therefore, on October 3, 2002, submitted a written inquiry to the Panel. On October 21, 2002, Petitioner made an additional parole request to the Panel. Petitioner explains that to date, she has not been provided with any information regarding a parole review date. Indeed, Respondents concede that Petitioner is due for a review. Petitioner argues that in light of the foregoing, this Court should remand the issue of her custody to an immigration judge.

It is clear to this Court that Petitioner has failed to receive a timely parole review. She was placed into INS custody on or about July 1, 2002. Over one year has passed since June 27, 2002, the date the Panel made the initial determination to detain Petitioner. The failure to provide the review is a clear violation of 8 C.F.R. § 212.12(g)(2). This failure also violates *Ngo*, wherein the Third Circuit held that prolonged detention of an inadmissible alien "is constitutional if the government provides individualized periodic review of the alien's eligibility for release on parole." *Ngo*, 192 F.3d at 392.

The Petitioner having been detained for over a year without a parole review, the Court finds that Respondents are in violation of terms of the Cuban Review Plan. 8 C.F.R. § 212.12(g)(2). Therefore, Respondents are ordered to convene the Cuban Review Panel within thirty (30) days, in order to evaluate whether Petitioner is entitled to parole. If Respondents fail to provide Petitioner with said review within thirty (30) days, the Court will grant a writ of habeas corpus and order her release under appropriate conditions of supervision.

CONCLUSION

For the reasons set forth above, the Court shall grant the petition in part and deny it in part. The petition is granted to the extent that Petitioner seeks individualized parole review. The review shall be

provided by the Cuban Review Panel. Respondents are ordered to provide Petitioner with a review within thirty (30) days. If Respondents fail to do so, the Court will, upon Petitioner's request setting forth said failure, grant a writ of habeas corpus and order her release under appropriate conditions of supervision. The petition is denied in all other respects. The accompanying Order is entered.

## ORDER

This matter having come before the Court upon Petitioner Xiomara Gonzalez's application for habeas corpus relief pursuant to 28 U.S.C. § 2241, and the Court having heard oral argument and considered the submissions of the parties, and for the reasons expressed in the Opinion of today's date;

**IT IS**, this 26th day of August, 2003, hereby

**ORDERED** that Petitioner's application for writ of habeas corpus is **GRANTED IN PART**, to the extent that Petitioner seeks an individualized parole review. Respondents are ordered to convene the Cuban Review Panel within thirty (30) days, in order to evaluate whether Petitioner is entitled to parole. If Respondents fail to provide Petitioner with the review within thirty (30) days, the Court will upon Petitioner's request setting forth said failure grant a writ of habeas corpus and order her release under appropriate conditions of supervision; and it is further

**ORDERED** that Petitioner's application for writ of habeas corpus is **DENIED in** all other respects.